# 25-1761-cv

## United States Court of Appeals

*for the*

## Second Circuit

JANE DOE,

*Plaintiff-Appellant,*

– v. –

FASHION INSTITUTE OF TECHNOLOGY,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:25-CV-950

# BRIEF FOR PLAINTIFF-APPELLANT

ABRA SIEGEL
NATIONAL JEWISH ADVOCACY CENTER
*Attorneys for Plaintiff-Appellant*
Three Times Square
New York, New York 10036
(312) 487-1281

COUNSEL PRESS (800) 4-APPEAL • (386393)

# TABLE OF CONTENTS

**Page**

JURISDICTION....................1
STATEMENT OF ISSUES....................1
PRELIMINARY STATEMENT....................3
STATEMENT OF THE CASE....................5
SUMMARY OF ARGUMENT....................7
STANDARD OF REVIEW....................8
ARGUMENT....................8

I. The District Court Abused its Discretion When It Denied Plaintiff's Unopposed Renewed Motion to Proceed Under a Pseudonym and Motion for Reconsideration....................9

A. The District Court erred When It Found that under *Sealed Plaintiff* Factor 1*,* Jewish Belief and Support for the Jewish State of Israel at Issue in this Litigation Is Not Highly Sensitive and of a Personal Nature....................9

B. The District Court abused Its Discretion When It Disregarded Death Threats to Zionists at FIT in Finding That *Sealed Plaintiff Factor 2:* risk of retaliatory physical and mental harm to Plaintiff "only slightly" favored pseudonymity....................11

1. The District Court Initially Abused Its Discretion By Overlooking the Zionist Death Threat Stickers....................11

2. The District Court Subsequently Abused Its Discretion When It Relied On *Doe v. Intel* to Hold That Zionist Death Threat Stickers Inside FIT's Buildings Were Not Threats Directed At "Persons Similarly Situated" to Jane Doe Zionist FIT Student....................12

C. *Sealed Plaintiff* Factor 3: The Injury Litigated Against Would be Incurred as a Result of the Disclosure of the Plaintiff's Identity....................20

D. *Sealed* Plaintiff Factor 4: Jane Doe is Particularly Vulnerable to the Possible Harms of Disclosure As A College Student Challenging A Disciplinary Proceeding....................22

E. *Sealed Plaintiff* Factor 6: The District Court Abused Its Discretion In Holding That FIT is Prejudiced By Jane Doe Proceeding Under a Pseudonym ....................23

1. The District Court did Not Consider Whether the Nature of Any Prejudice To the Defendant Differs at the Initial Pleading Stage Than At Later Stages of Litigation ....................26

2. The District Court Abused Its Discretion When It Found that Dangerous Media Attention on Jane Doe's Identity Could Unearth Witnesses Favorable to the Defendant At the Discovery or Trial Stage ....................28

3. The District Court Abused Its Discretion in Relying Upon Waived Prejudice ....................30

F. *Sealed Plaintiff* Factors 8 and 9: It is Contrary to the Public's Interest to Disclose Jane Doe's Identity, and There is a Weak Public Interest in Knowing the Litigants' Identities Due To The Purely Legal Nature of the Issues Presented at the Initial Pleading Stage of the Litigation ....................35

1. The Public Has No Interest In Jane Doe's Identity As to Her Allegations that FIT Has Been Deliberately Indifferent to On Campus Antisemitism....................36

2. There is No Public Interest In Knowing Plaintiff's Identity Because at the Initial Pleadings Stage The Lawsuit Involves Purely Legal Issues. ....................38

3. The Public Has A Strong Interest in Avoiding Deterrence of Suits Vindicating Title VI Rights ....................39

G. *Sealed Plaintiff* Factor 10: There are No Alternative Mechanisms for Protecting the Confidentiality of Jane Doe ....................41

CONCLUSION ....................42

CERTIFICATE OF COMPLIANCE ....................43

CERTIFICATE OF SERVICE....................44

# TABLE OF AUTHORITIES

**Page(s)** **Cases**

*Alexander v. Sandoval*,
532 U.S. 275, 282 (2001)....................................................................36

*Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*,
347 U.S. 483 (1954), *supplemented sub nom.*, 349 U.S. 294 (1955)................18

*Cannon v. Univ. of Chicago*,
441 U.S. 677, 704 (1979) *abrogated on other grounds by*
*Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ..........................................36

*Doe #1 v. Syracuse Univ.*,
No. 518CV0496FJSDEP, 2018 WL 7079489 (N.D.N.Y. Sept. 10,
2018), *report and recommendation adopted*, No.
518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28,
2020) ..................................................................................18, 19, 21, 22, 30

*Doe 1 v. Branca USA, Inc.*,
No. 22-CV-3806 (LJL), 2022 WL 2713543 (S.D.N.Y. July 13, 2022) ............31

*Doe No. 2 v. Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006)......................................................................28

*Doe v. City Univ. of New York*,
No. 21 Civ. 9544 (NRB), 2021 WL 5644642
(S.D.N.Y. Dec. 1, 2021) ..........................................................2, 14, 15, 16, 17

*Doe v. Colgate Univ.*,
No. 515CV1069LEKDEP, 2016 WL 1448829
(N.D.N.Y. Apr. 12, 2016)..................................................21, 23, 30, 40

*Doe v. Del Rio*,
241 F.R.D. 154 (S.D.N.Y. 2006)......................................................................40

*Doe v. Elmbrook Sch. Dist.*,
687 F.3d 840 (7th Cir. 2012) ...........................................................................10

*Doe ex rel. Doe v. Elmbrook School Dist.*,
658 F.3d 710 (7th Cir. 2011) ...........................................................................10

*Doe v. Hobart & William Smith Colleges*,
No. 6:20-CV-06338 EAW, 2021 WL 1062707
(W.D.N.Y. Mar. 19, 2021)....................................................................21, 28

*Doe v. Intel Corp.*,
786 F. Supp. 3d 576 (S.D.N.Y. 2024), *appeal dismissed*,
No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025)
.................................................................. 2, 12, 14, 15, 16, 17, 18, 20, 21

*Doe v. Leonelli*,
No. 22 Civ. 3732 (CM), 2022 WL 2003635
(S.D.N.Y. June 6, 2022)...........................................................................34

*Doe v. N.Y. Blood Ctr.*,
39 Fed. Appx. 686 (2d Cir. 2001).............................................................39

*Doe v. Neverson*,
820 Fed. Appx. 984 (11th Cir. 2020)....................................................10, 19

*Doe v.Pittsylvania County, VA*,
844 F. Supp. 2d 724 (W.D. Va. 2012)...................................................36, 37

*Doe v. Porter*,
370 F.3d 558(6th Cir. 2004) ....................................................................9, 10

*Doe v. Provident Life and Acc. Ins. Co.*,
176 F.R.D. 464 (E.D. Pa. 1997)...........................................................37, 40

*Doe v. Rensselaer Polytechnic Inst.*,
No. 1:20-cv-1185, 2020 WL 5775193 (N.D.N.Y. Sept. 28, 2020) ....................21

*Doe v. Smith*,
189 F.R.D. 239 (E.D.N.Y. 1998), *favorable after opinion vacated on reconsideration*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999)..................................26

*Doe v. Stegall*,
653 F.2d 180 (5th Cir. 1981) .......................................................9, 10, 36, 37, 40

*Doe v. Telemundo Network Grp., LLC*,
No. 22 Civ. 7665 (JPC), 2023 WL 6259390
(S.D.N.Y. Sept. 26, 2023).........................................................................20

*Doe v. Townes*,
No. 19 Civ. 8034 (ALC) (OTW), 2020 WL 2395159
(S.D.N.Y. May 12, 2020)....................................................................20, 22, 23

*Doe v. Trustees of Dartmouth College*,
No. 18-CV-040-LM, 2018 WL 2048385
(D.N.H. May 2, 2018)...............................................................20, 21, 23, 40

*Doe v. University of St. Thomas*,
No. 16-CV-1127, 2016 WL 9307609 (D. Minn. May 25, 2016) ..........20, 21, 23

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) ........................................................18, 19, 22, 27

*eg., Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989)...........................................................................37

*Engel v. Vitale*,
370 U.S. 421 (1962)..........................................................................................10

*EW v. New York Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003)...............................................................33, 39

*Free Speech v. Reno*,
No. 98 Civ. 2680(MBM), 1999 WL 47310 (S.D.N.Y. Feb. 1, 1999) ................37

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993) ...........................................................28, 32, 33, 35

*Jewish Press, Inc. v. Kingsborough Community College*,
201 A.D.3d 547 (2022) .....................................................................................40

*Levine v. United States*,
362 U.S. 610 (1960)....................................................................................33, 34

*Lozano v. City of Hazleton*,
496 F. Supp. 2d 477 (M.D. Pa. 2007), *aff'd in part, vacated in part*,
620 F.3d 170 (3d Cir. 2010), *cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011), *and aff'd in part, rev'd in part*, 724 F.3d 297 (3d Cir. 2013)....................................19

*Matthews v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
No. 17 Civ. 503 (TJM) (DEP), 2018 WL 11697266 (N.D.N.Y. Oct. 19, 2018) ........ 34

*P.D. v. Sullivan*,
No. 24 Civ. 778 (NSR), 2024 WL 1719890 (S.D.N.Y. Apr. 22, 2024) ........ 34, 35

*Plaintiff B v. Francis*,
631 F.3d 1310 (11th Cir. 2011) ........ 12, 32

*Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*,
931 F.3d 59 (2d Cir. 2019) ........ 28

*Rapp v. Fowler*,
537 F. Supp. 3d 521 (S.D.N.Y. 2021) ........ 22, 23

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555 (1980) ........ 36, 37

*Roe v. Wade*,
410 U.S. 113 (1973) ........ 39

*S.D. v. Decker*,
No. 22 Civ. 3063 (VSB) (BCM), 2022 WL 1239589 (S.D.N.Y. Apr. 27, 2022) ........ 34

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ........ *passim*

*United States v. Agrawal*,
726 F.3d 235 (2d Cir. 2013) ........ 33

*United States v. Pilcher*,
950 F.3d 39 (2nd Cir. 2020) ........ 1

*United States v. Romano*,
794 F.3d 317 (2d Cir. 2015) ........ 3, 26, 33

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ........ 24, 33

*United States v. Turner*,
720 F.3d 411 (2d Cir. 2013) .......................................................14

*Ex parte Young*,
209 U.S. 123 (1908).......................................................26

**Rules and Statutes**

28 U.S.C. § 1331 .......................................................1

28 U.S.C. § 1332 .......................................................1

28 U.S.C. § 1367 .......................................................1

Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.............................38

Family Educational Rights and Privacy Act.......................................38, 40

Fed. R. App. P. 4 (a) .......................................................1

Fed. R. Civ. P. 12(b)(6).......................................................7, 25

Freedom of Information Act .......................................................37

S.D.N.Y. Local Civ. R. 6.3 .......................................................14

Title VI of the Civil Rights Act of 1964 .......................................29, 36, 39

**Other Authorities**

Article III of the United States Constitution.......................................1

*CBS News*, *Cody Balmer's 911 Call After Fire at Pennsylvania Gov. Josh Shapiro's Residence Released* (Apr. 15, 2025), https://www.cbsnews.com/philadelphia/news/cody-balmer-josh-shapiro-residence-fire-gaza-palestinian/...........................................3

*Colorado Man Charged With Hate Crimes After Firebomb Attack on Israel Hostage March in Boulder*, Associated Press (June 25, 2025),https://apnews.com/article/7e680648371c3d1cb7c026d888d 99279.......................................................4

*Two people are shot to death exiting a Jewish museum in our nation's capitol*. (May 21, 2025). https://www.nbcnews.com/news/us-news/shooting-dc-jewish-museum-rcna208427 ....................................................3

U.S. Dep't of Just., Man Pleads Guilty to Antisemitic Assault Near College Campus (Aug. 15, 2025), https://www.justice.gov/opa/pr/man-pleads-guilty-antisemitic-assault-near-college-campus ..........................................................................4

## JURISDICTION

This is an interlocutory appeal from the U.S. District Court for the Southern District of New York's ("District Court") (a) April 3, 2025 Order Denying Appellant's Renewed Unopposed Motion to Proceed Under a Pseudonym ("Renewed Unopposed Motion"), (b) April 21, 2025 Order to Defendant to Inform Court Whether By Not Opposing, Defendant also Intended to Disclaim All Prejudice ("Prejudice Waiver Inquiry"); and (c) July 11, 2025, Order Denying Appellant's Motion for Reconsideration. A. 114-124; A. 145; and A. 166-172. The District Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the constitution and statutes of the United States; (ii) Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000; and (iii) the state law claims are so closely related to the federal law claims as to form the same case controversy under Article III of the United States Constitution.

Appellant timely appealed on July 18, 2025. A. 173; Fed. R. App. P. 4 (a). Jurisdiction in this Court is proper under *United States v. Pilcher*, 950 F.3d 39, 41 (2nd Cir. 2020)(denial of motion to proceed anonymously is appealable collateral order).

## STATEMENT OF ISSUES

1. Whether the district court abused its discretion when it found that stickers affixed inside Defendant FIT's university buildings stating "The only good Zionist is a dead Zionist" were not directed at individuals "similarly situated" to Jane Doe FIT Zionist student, when analyzing the risk of retaliation and severity of harm to Jane Doe on her motion to proceed under a pseudonym under *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008)?

2. Whether the District Court abused its discretion when it relied upon *Doe v. Intel Corp*., 786 F. Supp. 3d 576, 582 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025), and *Doe v. City Univ. of New York*, No. 21 Civ. 9544 (NRB), 2021 WL 5644642 (S.D.N.Y. Dec. 1, 2021) for its holding that Zionist death threat stickers affixed inside Defendant university buildings, and violence against Jews in city where university located, "were not directed at plaintiff [Jewish Zionist student] or similarly situated individuals and so do not demonstrate that plaintiff is at risk of harm"?

3. Whether the District Court abused its discretion in this case by taking out of context and misreading the inapposite holding in *Doe v. City Univ. of New York*, No. 21 Civ. 9544 (NRB), 2021 WL 5644642 (S.D.N.Y. Dec. 1, 2021), that a news' program guest's hyperbolic threat of drone strikes against "worst offender [anti-vaccine] podcasters" were not directed at individuals "similarly situated" to Plaintiff student who declined vaccination, who was not a podcaster, in concluding that threats and violence in New York City against Zionists are not directed against individuals "similarly situated" to Plaintiff Zionist?

4. Whether the District Court abused its discretion when it denied an unopposed motion to proceed under a pseudonym in part on the basis of prejudice to the Defendant who, while represented by counsel, stated that it would not oppose the motion?

5. Whether the District Court abused its discretion when it denied a motion to proceed under a pseudonym at initial pleading stage in part on the basis of prejudice to the Defendant, when neither the Defendant nor the District Court articulated prejudice the Defendant might suffer at the initial pleading stage?

6. Whether the District Court abused its discretion when it denied Plaintiff's motion for failure to identify "data that the court overlooked," when Plaintiff stated in her motion for reconsideration that the District Court may have

overlooked uncontested evidence that Plaintiff Zionist student presented, in her motion to proceed under a pseudonym, that Zionist death threat stickers had recently been affixed inside Defendant university's buildings?

7. Whether the District Court abused its discretion when it held that Defendant's counsel who, in response to Plaintiff counsel's question as to whether Defendant would consent to Plaintiff's renewed motion to proceed under a pseudonym, affirmatively stated in writing that Defendant would not oppose Plaintiff's motion, did not thereby waive opposition under *United States v. Romano*, 794 F.3d 317 (2d Cir. 2015)?

8. Did the District Court abuse its discretion in denying Plaintiff's Renewed Unopposed Motion to Proceed Under a Pseudonym and Motion for Reconsideration of that Denial under the ten-factor test set forth in the *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008)?

9. Did the District Court abuse its discretion in holding that Jewish belief and support for the Jewish State of Israel is not highly sensitive and of a personal nature?

## PRELIMINARY STATEMENT

There is a crises of violence facing Jews in America today. A growing drumbeat of demonization of Jews who identify with and support the Jewish State of Israel and the concept of Jewish self-determination in their ancestral homeland, also known as Zionism, has made this creed an increasingly dangerous proposition. A Jewish governor has his home set on fire.[1] Two people are shot to death exiting a

[1] *CBS News*, *Cody Balmer's 911 Call After Fire at Pennsylvania Gov. Josh Shapiro's Residence Released* (Apr. 15, 2025), https://www.cbsnews.com/philadelphia/news/cody-balmer-josh-shapiro-residence-fire-gaza-palestinian/.

Jewish museum in our nation's capitol.[2] One person is killed at a march to raise awareness of kidnapped Israeli hostages.[3]

Jews in America are stabbed, shot at, and seriously assaulted at an explosive rate these days, including on college campuses. Jewish elementary schools hide all public signs of their religious affiliation out of safety concerns. Synagogues have become armed fortresses, with round the clock guards, metal detectors and brick walls to protect their worshipers.

This lawsuit alleges that Defendant Fashion Institute of Technology ("FIT"), a part of the State University of New York, allowed itself to become a terrifying microcosm of this campaign of harassment and violence of Jews. Imagine yourself attending FIT as a Jewish student today, where a fellow FIT student lead chants for your murder and an FIT student uses a sign to commit an assault; where you are told to "go kill yourself" and called a "baby killer," where a community member walks the halls in attire calling for violence depicting a blood red Jewish star, where stickers stating "The Only Good Zionist is a Dead Zionist" are repeatedly affixed inside FIT's buildings.

In this environment of violence and vilification, Plaintiff Jane Doe moved to proceed under a pseudonym in her lawsuit against FIT alleging lengthy deliberate indifference to antisemitism in the form of anti-Zionism, and a retaliatory and discriminatory disciplinary proceeding after she was falsely accused of assaulting a stranger distributing flyers inviting students to sign an antisemitic petition, resulting in online threats of physical violence in FIT unofficial student social media.

The District Court initially granted her request, finding that the risk of retaliatory harm favored her application, but reversed itself on her unopposed

---

[2] (May 21, 2025). https://www.nbcnews.com/news/us-news/shooting-dc-jewish-museum-rcna208427.

[3] See *Colorado Man Charged With Hate Crimes After Firebomb Attack on Israel Hostage March in Boulder*, Associated Press (June 25, 2025),https://apnews.com/article/7e680648371c3d1cb7c026d888d99279; Colorado Man Faces Hate-Crime Charges in Boulder Firebombing of Israel Hostage March, Politico (June 25, 2025).

renewed motion, without taking into account the specific facts and circumstances, including stickers affixed inside FIT calling for the death of Zionists, and repeatedly citing prejudice to Defendant FIT – a counseled defendant who affirmatively stated it would not oppose the renewed motion – without identifying any prejudice to FIT at this stage of litigation. Jane Doe asks this Court to correct the abuses of discretion herein and allow her to proceed in this lawsuit under a pseudonym.

## STATEMENT OF THE CASE

In this case, Jane Doe, Jewish FIT college student, alleges that FIT disregarded antisemitic acts that created a hostile environment and deprived her of the full benefit of educational opportunities, culminating in retaliatory and discriminatory selective enforcement of university rules, due process violations, breach of contract and intentional and negligent infliction of emotional distress upon her. A. 32-72.

After months of deliberate indifference to on campus antisemitism, and approximately 48 hours after Jane Doe's most recent complaint about Defendant's failures in this regard, on February 2, 2024, FIT rushed to silence Jane Doe for exercising her freedom of expression the prior day by shoving away a flyer asking for signatures on a false and defamatory antisemitic petition, while turning a blind eye and refusing to take action against the flyer distributors and FIT students who called for violence against Jews and destruction of the Jewish State of Israel, for the genocide of the Jewish people, and specifically harassed and threatened Jewish FIT students and committed an assault. A. 36-42.

When Plaintiff shoved the offensive flyer back, she inadvertently jostled the stranger who was disseminating flyers, who stumbled backwards a couple steps. A. 40. An FIT student who was also handing out flyers inviting signatures on the antisemitic petition raced after Jane Doe and took her photo, without asking for Jane

Doe's consent, and posted it on unofficial FIT student social media. A. 40. Jane Doe was then the subject of threatening social media posts on FIT student social media, including suggestions of "beating her ass as an example," statements that if they were present, her "face would be catching a left hook to the jaw," and that they were "pissed off," with a terrifying photo of a snarling dog with fangs bared. A. 40-41.

Jane Doe was fearful and reached out to FIT for assistance. A. 41. FIT's response was to state that the social media outlets were not officially affiliated with FIT, and to suspend Plaintiff for physical abuse and disrupting campus. A. 41.

On January 31, 2025, Jane Doe filed her Complaint against FIT in the District Court under a pseudonym. A. 2. The following day her motion to proceed under a pseudonym was docketed. A. 2; A. 11 - 26.

On February 4, 2025, the District Court (Cronan, J.) granted Plaintiff's motion to proceed under a pseudonym, prior to the entry of Defendant's appearance, until the later of (1) thirty days following service of the Complaint or (2) the District Court's ruling on any timely renewed motion to proceed anonymously filed within thirty days after service of the Complaint. A. 27- 31.

On March 21, 2025, Jane Doe filed her timely Renewed Unopposed Motion to Proceed Under a Pseudonym. A. 94, 102, 105, 109.

On April 3, 2025, the District Court (Cronan, J.) issued its Order denying Jane Doe's Unopposed Renewed Motion. A. 114-124.

On April 17, 2025, Plaintiff filed a motion for reconsideration, suggesting that the District Court overlooked the on campus Zionist death threats, and citing controlling caselaw holding that the District Court could not base its ruling on prejudice to a counseled Defendant who had stated that it would not object. A. 115-144.

On April 21, 2025, the District Court (Cronan, J.) issued an Order to Defendant to state whether, by not opposing Plaintiff's renewed motion, Defendant also intended to disclaim prejudice, and if not, to describe the prejudice. A. 145.

On April 28, 2025, FIT's counsel filed a letter stating that FIT did not intend to disclaim prejudice, identifying prejudice it could purportedly suffer at later discovery and trial stages in the litigation. A. 146-150.

On May 23, FIT filed a motion to dismiss the lawsuit under Fed. R. Civ. P. 12(b)(6), supported by an affidavit by the Dean who suspended Jane Doe. A. 4. Jane Doe filed a timely opposition, however, upon further legal analysis, four business days later asked the District Court for leave to move to amend her complaint to add the Dean as an individual defendant. A. 4.

On July 2, 2025, the District Court granted leave to Jane Doe to move to amend and set a briefing schedule, and adjourned FIT's reply in further support of its motion to dismiss until after resolution of Jane Doe's motion to amend. A. 4.

On July 11, 2025, the District Court (Cronan, J.) issued its Order denying Plaintiff's Motion for Reconsideration. A. 166-172.

This appeal followed. A. 173.

## SUMMARY OF ARGUMENT

The District Court abused its discretion in denying Jane Doe's motion to proceed under a pseudonym because it did not consider applicable law and the specific circumstances of this case in its application of the ten factor *Sealed Plaintiff* test. First, it did not consider circuit level authority, including that relied upon by this Court in *Sealed Plaintiff,* that recognizes that religious belief is a highly sensitive matter of a personal nature. Second, it disregarded death threats to Zionists posted at FIT in finding the risk of retaliatory physical and mental harm to Jane Doe "only slightly" favored pseudonymity. Third, the District Court disregarded applicable

authority that the injury litigated against herein, expungement of Jane Doe's academic record to remedy the permanent tarnish at the outset of her adult life, would be incurred as a result of the disclosure of her identity. Fourth, the District Court disregarded applicable authority that Jane Doe, as a college student who has yet to embark on her professional life, is particularly vulnerable to the possible harms of disclosure. Fifth, the District Court denied pseudonymity to Jane Doe on the basis of prejudice to FIT – who by its non-opposition waived prejudice – without considering whether the nature of any prejudice differs at this initial pleading stage, contrary to this Court's dictates in *Sealed Plaintiff.* Sixth, the District Court did not consider applicable authority that it is contrary to the public's interest to disclose identity where it will deter others from vindicating their rights, and that there is a weak public interest in knowing the litigants' identities due to the purely legal nature of the issues presented at the initial pleading stage of the litigation. Finally, the District Court abused its discretion because it was clearly erroneous to conclude that there are alternative mechanisms for protecting the confidentiality of Jane Doe.

## STANDARD OF REVIEW

The District Court's decision to deny an application to litigate under a pseudonym is reviewed for abuse of discretion. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). A district court abuses its discretion when "(1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Id.* (citations and footnotes omitted).

## ARGUMENT

## I. The District Court Abused its Discretion When It Denied Plaintiff's Unopposed Renewed Motion to Proceed Under a Pseudonym and Motion for Reconsideration

### A. The District Court erred When It Found that under *Sealed Plaintiff* Factor 1, Jewish Belief and Support for the Jewish State of Israel at Issue in this Litigation Is Not Highly Sensitive and of a Personal Nature

The District Court in its initial ruling granting Jane Doe's motion to proceed under a pseudonym correctly stated that Jane Doe alleges that FIT disregarded antisemitic acts on its campus and online that, among other things, created a hostile environment and deprived her of the full benefit of educational opportunities at FIT. A. 27. Jane Doe alleged that she is Jewish, and that FIT retaliatorily and discriminatorily suspended her after she was falsely accused of deliberately assaulting a stranger handing out flyers calling for signatures on an antisemitic petition. A. 35, 40. However, the District Court held that that the first *Sealed Plaintiff* factor, whether the litigation involves matters that are highly sensitive and of a personal nature, weighed against her. A. at 30-31. Likewise, when the District Court denied her renewed unopposed motion, it held that the first *Sealed Plaintiff* factor weighed against her. A.117-118.

In so ruling, the District Court overlooked settled authority that religious beliefs are the quintessentially private matter, including in *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981), cited by this Court in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008)(discussing "the balance pitting privacy concerns against the presumption of openness of judicial proceedings"); *see also Doe v. Porter*, 370 F.3d 558, 560-61(6th Cir. 2004) ("This suit—challenging a government activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment.") (affirming grant of pseudonymity to plaintiffs suing to enjoin a school board's practice of permitting

the teaching of the Christian Bible as religious truth); *cf. Doe ex rel. Doe v. Elmbrook School Dist.*, 658 F.3d 710, 721-24 (7th Cir. 2011) ("Lawsuits involving religion can implicate deeply held beliefs and provoke intense emotional responses."), *adopted on this issue by Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 842-43 (7th Cir. 2012) (*en banc*)); *cf. Engel v. Vitale*, 370 U.S. 421, 431-32 (1962) ("religion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate."). As the Fifth Circuit explained in *Doe v. Stegall:*

> *Here, the Does complain of public manifestations of religious belief; religion is perhaps the quintessentially private matter. Although they do not confess either illegal acts or purposes, the Does have, by filing suit, made revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior.*

653 F. 2d at 186; *cf. Doe v. Neverson,* 820 Fed. App'x. 984, 987 (11th Cir. 2020) (district court abused its discretion in denying motion to proceed under pseudonym where it failed to properly consider plaintiff's allegations about the stigma she claimed she would face as a result of her family's Muslim religious beliefs).

Just like the plaintiffs' private and unpopular religious beliefs in *Stegall, Porter, Elmbrook* and *Neverson*, Jewish identity, and identification with and support for the Jewish State of Israel, is highly sensitive and personal. It today invites a tremendous amount of opprobrium, ranging from verbal harassment to physical violence, including on college campuses, and FIT's campus in particular. A. 16-17; A. 32-34, 36-41 (FIT student leading chants calling for global intifada; Jewish students equated with Nazis and told to "go kill yourselves;" in person and online harassment (*e.g.*, "baby killer!","genocide supporter", "Zio!"); protests and stickers at FIT encourage students to "punch a Zionist"; Jewish student at rally hit by a sign by a person who was, on information and belief, an FIT student); A. 135; FIT

community attire calling for intifada with a blood red Jewish star, "The Only Good Zionist is a Dead Zionist," stickers affixed inside FIT's buildings. A 105.

Accordingly, the District Court erred in finding that the *Sealed Plaintiff* first factor weighed against her pseudonymity.

### B. The District Court abused Its Discretion When It Disregarded Death Threats to Zionists at FIT in Finding That *Sealed Plaintiff Factor 2:* risk of retaliatory physical and mental harm to Plaintiff "only slightly" favored pseudonymity

#### 1. The District Court Initially Abused Its Discretion By Overlooking the Zionist Death Threat Stickers

In the District Court's initial Order granting Plaintiff's motion to proceed under a pseudonym, it held that the second *Sealed Plaintiff* factor, whether identification poses a risk of retaliatory physical or mental harm, "weighed in her favor." A. 29. The District Court found that Plaintiff alleged that she was subject to "violent threats when her picture was posted on social media after she refused to accept a flier inviting students to sign a petition "claim[ing] that Jews of Israel are colonizers that engage in ethnic cleansing and commit genocide in Gaza, and disclosure of her identity at this stage could subject her to similar threats[.]" and that Plaintiff was told by students at an anti-Israel protest to "go kill [herself]," and later when her picture was posted online, others suggested that they "beat[] her ass as an example" A. 27, 29 (citations omitted).

The only difference between Jane Doe's initial motion and her renewed unopposed motion in this regard was that Jane Doe referenced new, grave antisemitic death threats at FIT, namely, stickers repeatedly affixed inside its buildings stating, "The only good Zionist is a Dead Zionist," and a person walking an FIT hallway wearing a shirt stating, "Long live the Intifada," a recognized call for violence, festooned with a blood red Jewish star. A. 105.

The District Court in ruling upon Jane Doe's unopposed renewed motion found "*some risk* of harm to her from third parties." A. 118-119 (emphasis added). The District Court did not reference the new Zionist Death Threat stickers affixed inside FIT's hallways or FIT community attire calling for intifada, festooned with a blood red Jewish star. *See generally*, A. 114-124. The District Court then *downgraded* its ruling from two months earlier, from holding that *Sealed Plaintiff* factor two "weigh[s] in her favor", to "weigh[s] only slightly in favor" of anonymity. *Compare* A. 29 *with* A. 119.

The District Court's failure to address the grave implications to the risk of retaliatory physical harm of calls for the death of Zionists and violence against Jews, *within* FIT is abuse of discretion that has led Circuit Courts to reverse the denial of motion to proceed under a pseudonym. *See Plaintiff B v. Francis*, 631 F.3d 1310, 1318 (11th Cir. 2011)(reversing denial of motion to proceed under a pseudonym because the district court, "failed to demonstrate its comprehension of what exactly is at stake for the Plaintiff[.]").

### 2. The District Court Subsequently Abused Its Discretion When It Relied On *Doe v. Intel* to Hold That Zionist Death Threat Stickers Inside FIT's Buildings Were Not Threats Directed At "Persons Similarly Situated" to Jane Doe Zionist FIT Student

In Jane Doe's Motion for Reconsideration, she argued that the District Court overlooked the recent Zionist death threat stickers affixed inside FIT's buildings, and this time included a photo. A. 134.




Jane Doe also pointed out that antisemites have been acting out their violent threats on college campuses in New York and beyond. A. 135 (*citing Haggai et al v. Kiswani, et al,* No. 1 :25-cv-02400-JAV (S.D.N.Y.), First Amended Complaint, at paras. 133 (assault); 165 (assault leading to hospitalization)*; see also Students Against Antisemitism, Inc. et al v. The Trustees of Columbia University in the City of New York et al*, No. 1:24-cv-01306 (S.D.N.Y.), Complaint, at paras. 125, 200 (assault including broken finger and head lacerations); *Yakoby et al v. University of Pennsylvania*, 2:23-cv-04789 (E.D. Pa), Complaint, at para. 158 (assault); *see also StandWithUs Center for Legal Justice et al v. Massachusetts Institute of Technology.*, No. 24-1800 (1st Cir. 2024), Complaint, at para. 139 (assault)).

In denying Jane Doe's motion for reconsideration, the District Court acknowledged that Jane Doe suggested that the District Court overlooked the "The Only Good Zionist is a Dead Zionist" stickers. A. at 167. Nonetheless the District

Court held that Plaintiff "failed to identify" data that the court overlooked, as required by S.D.N.Y. Loc. Civ. R. 6.3. A. at 172 (citation omitted).

The District Court rejected Plaintiff's argument that it erred by concluding that the risk of retaliation and severity of harm to the plaintiff weighed "only slightly" in favor of anonymity. A. 167. Regarding the "The Only Good Zionist is a Dead Zionist" stickers, the district court concluded:

> While Plaintiff's allegations of *derogatory* stickers[4] affixed to buildings on FIT's campus and of *violence against Jewish students* elsewhere "are abhorrent," these alleged actions "were 'not directed at plaintiff or ***similarly situated individuals*** and so do not demonstrate that plaintiff is at risk of harm.'" *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 582 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025) (alteration adopted and footnote omitted) (quoting *Doe v. City Univ. of New York*, No. 21 Civ. 9544 (NRB), 2021 WL 5644642, at *3 n.2 (S.D.N.Y. Dec. 1, 2021)); *see id.* at 582 n.2 ("Individuals are not '***similarly situated***' simply because they belong to the same protected group.").

A. 168 (emphasis added).

#### a. The Zionist Death Threat Stickers Repeatedly Affixed Inside FIT Are Targeted Threats, Unlike the Violence and Threats Across New York cited in *Doe v. Intel*

First, the threats in *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 582 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025) are factually inapposite from the Zionist death threat stickers and attire at FIT. In *Doe v. Intel*, Plaintiff John Doe, a Jewish Israeli veteran, filed an employment

[4] Characterizing the "The Only Good Zionist is a Dead Zionist" stickers as "derogatory" rather than death threats ignores Second Circuit authority. Use of a passive voice does not transform a threat into a mere political statement. *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013):

> [Defendant] argues that a "close syntactical analysis" of his statements reveals that he used only the passive voice. He wrote variously that [judges]"deserve to be killed"….Because he never explicitly wrote, "I will kill them," Turner claims, his words cannot reasonably have been interpreted as a threat. …..[T]his comports neither with precedent nor with the protections afforded by the First Amendment.

*Id.* at 422.

discrimination lawsuit after his manager made statements and "liked" posts "advocat[ing] for and celebrat[ing] the murder of Israelis." The employee sought to proceed under a pseudonym because he believed that "[he] and his family will be subjected [to] a campaign of intimidation and harassment at the very least, and real physical harm and possibly death at the worst." *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 582 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025).

The district court in *Doe v. Intel* denied his request because the employee had not provided "direct evidence linking disclosure of [his] name to a specific physical or mental injury" or threat thereof. *Doe v. Intel Corp.,* 786 F. Supp. 3d 576, 579-582 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025). The court in *Doe v. Intel*, held that:

> While the examples of violent attacks [on Jews in New York] that Plaintiff highlights are abhorrent, they were "not directed at plaintiff or ***similarly situated individuals***[5] and so do[ ] not demonstrate that plaintiff is at risk of harm. *Doe v. City Univ. of N.Y.*, No. 21-CV-9544, 2021 WL 5644642, at *3 n.2 (S.D.N.Y. Dec. 1, 2021).

786 F. Supp. 3d 576, 582 (S.D.N.Y. 2024) citations to record omitted; explanation added), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025).

As a preliminary matter, the employee in *Doe v. Intel* based his risk of harm *solely* on harassment of and attacks on Jews across New York, a city of over 8 million people. *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 582-83 (S.D.N.Y. 2024), *appeal dismissed*, No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025). In contrast, the Zionist death threat stickers posted *inside* FIT buildings, and the intifada garb with a blood red Jewish star worn *inside* FIT, present a far more targeted risk of retaliatory harm to Jane Doe from the hostile antisemites who share the FIT

[5] Individuals are not "*similarly situated*" simply because they belong to the same protected group.

campus, wear the garb calling for anti-Jewish violence, and posted the Zionist death threat stickers *inside* FIT's buildings. Moreover, Jane Doe alleged physical violence at FIT, namely that at a rally where an FIT student led chants for violence against Jews, a Jewish student was hit with a sign. A. 37.

#### b. The District Court herein and in *Doe v. Intel* Took *Doe v. CUNY's* Reference to Threats Against "Similarly Situated Persons" Out of Context

The District Court herein, like the district court in *Doe v. Intel,* relied upon and took out of context a *Doe v. City Univ. of New York ("Doe v. CUNY")* statement about threats that were not directed at persons similarly situated to the plaintiff in that case. The plaintiff in *Doe v. CUNY* sued when his college attendance was barred because he refused to get the COVID vaccine, because the vaccines were produced and/or tested using aborted human fetal cell lines. 2021 WL 5644642, at *1. Plaintiff moved to proceed under a pseudonym, citing the "shaming and blaming" of unvaccinated people, such as statements by President Biden expressing impatience and frustration with unvaccinated persons. *Id*. at *3.

The court in *Doe v. CUNY* held that "statements expressing a lack of patience or frustration at unvaccinated people do not support plaintiff's claim that he would be subject to extensive harassment "and perhaps even violent reprisals," and do not suffice to justify anonymity." *Id*. In a footnote, cited in part by this District Court herein and the Court in *Doe v. Intel*, the Court in *Doe v. CUNY* wrote:

> Plaintiff also cites a *[news]* article regarding a [television[ guest…. commenting that anti-vaccination conspiracy theorist activists were "bioterrorists" and calling for "drone strikes." It appears that the guest's hyperbolic comments regarding "drone strikes" ***are addressed at those "worst offender podcasters," rather than individuals like plaintiff***. While it is farcical to suggest that plaintiff would actually be subject to "drone strikes" if he was publicly identified in this lawsuit, the comment was not directed at

> plaintiff ***or similarly situated individuals*** and so does not demonstrate that plaintiff is at risk of harm.

786 F. Supp. 3d 576, 582 (emphasis added; citations omitted).

Thus, the plaintiff in *Doe v. CUNY* cited a far away, hyperbolic threat against "worst offender [anti-vaccine] podcasters" as the basis of his fear - but the plaintiff was not a podcaster, let alone a "worst offender" podcaster, and it was for this reason the court in *Doe v. CUNY* held that he was not similarly situated. Thus, a correct reading of *Doe v. CUNY* reveals that Jane Doe herein, a Jewish Zionist FIT student, is similarly situated to the Zionists who are the subject of the Zionist death threat stickers affixed inside FIT's campus buildings.

**c. The District Court Abused Its Discretion When It Disregarded the Zionist Death Threat Stickers Affixed Inside FIT Because Plaintiffs Need Not Prove Individualized Risk Where the Record Demonstrates that All Similarly Situated Persons Reasonably Fear Sufficiently Severe Retaliation**

Moreover, the District Court abused its discretion because it disregarded the Zionist death threat stickers at FIT in reliance upon the unsupported and wrongly decided *Doe v. Intel*, which held:

> Plaintiff has not shown that the risks he faces are so substantially greater than those faced by members of other protected groups to justify a departure from the well-settled norm that plaintiffs bringing discrimination claims must publicly disclose their identities. Indeed, a central reason why protected classes like race and religion are protected at all is because such groups are more vulnerable to precisely the kind of harassment, intimidation, and even violence that Plaintiff highlights in his briefs. Were the general existence of discrimination a sufficient reason to proceed anonymously, then scarcely any discrimination cases would be exempt.

*Doe v. Intel Corp.,* 786 F. Supp. 3d 576, 582–83 (S.D.N.Y. 2024), *appeal dismissed,* No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025).

In footnote six, the court in *Doe v. Intel* continued: "Indeed, the history of civil rights litigation is replete with examples where named plaintiffs have borne a risk of reprisal. See, e.g., Library of Congress, Brown v. Board at Fifty: 'With an Even Hand' (2004), https://www.loc.gov/exhibits/brown/brown-aftermath.html."(emphasis added). However, the law of the Second Circuit is not that plaintiffs are required to "bear" the "risk of reprisal for civil rights litigation," contrary to the reasoning of *Doe v. Intel.* [6] This statement suggests that African Americans in Jim Crow South fighting segregation would not have been allowed to proceed under a pseudonym, on the basis of fear of retaliatory harm, because all persons in that protected group in that geographic region reasonably feared severe retaliation.

Rather, under the *Sealed Plaintiff* second factor, a widespread risk of reprisal need not be "borne" but rather is a factor favoring proceeding under a pseudonym. Thus, in *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir. 2000), endorsed in *Sealed Plaintiff v. Sealed Defendant*, the Ninth Circuit rejected this very argument:

> *Plaintiffs need not prove that **each and every** garment worker who joins the suit [against his employer for wage and hour violations] faces an individualized risk of retaliation. Rather, the evidence in the record demonstrates that **all** nonresident garment workers **reasonably fear sufficiently severe retaliation*** by the recruiting agencies, the Chinese government, and their employers to warrant their anonymity.

214 F. 3d. at 1069 n. 11 (emphasis added).

Similarly, in *Doe #1 v. Syracuse Univ.,* No. 518CV0496FJSDEP, 2018 WL 7079489 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, No.

---

[6] Notably, in *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 487 (1954), *supplemented sub nom.*, 349 U.S. 294 (1955), the plaintiff students are not referenced by name, but are instead referred to as "minors of the Negro race, through their legal representatives," affording a level of anonymity, which leaves open the possibility that this was in recognition of the risk of retaliatory harm to the students.

518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020), the court allowed nine students to proceed under a pseudonym in their action challenging the university disciplinary proceeding for their participation in a fraternity "skit," based on threats and risk of harm directed at some of them. The court explained:

> Recent events buttress plaintiffs' fears regarding retribution, and even the potential for physical violence is a legitimate concern. The incident giving rise to plaintiffs' claims in this action has been the subject of nationwide notoriety. According to *one of the plaintiffs*, a member of the fraternity chapter was physically assaulted in a local *restaurant based upon his membership in the fraternity*. *Others* have been *threatened* with physical harm and "forced to take refuge with friends and family to avoid public harassment."

2018 WL 7079489, at *5 (citations omitted); *see also Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 508–10 (M.D. Pa. 2007), *aff'd in part, vacated in part*, 620 F.3d 170 (3d Cir. 2010), *cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011), *and aff'd in part, rev'd in part*, 724 F.3d 297 (3d Cir. 2013)(granting anonymity to plaintiffs based on threats to other persons advocating for the same cause)( "testimony indicated the intense public interest … led at times to harassment and intimidation that created fear *even among those with a more secure social and legal status than the anonymous plaintiffs*").

In conclusion, because the District Court abused its discretion by discounting the Zionist death threats affixed inside FIT buildings on the grounds that they were not directed at persons similarly situated to Jane Doe Zionist FIT student, its ruling should be reversed. *See Doe v. Neverson*, 820 Fed. Appx. 984, 988 (11th Cir. 2020):(reversing denial of pseudonymity based on improper discounting of evidence); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (reversing denial of pseudonymity because clearly erroneous assessment of the evidence).

### C. *Sealed Plaintiff* Factor 3: The Injury Litigated Against Would be Incurred as a Result of the Disclosure of the Plaintiff's Identity

Jane Doe argued in her initial Motion to Proceed Under a Pseudonym that a key portion of the precise injury she was litigating against, namely, the harm to her academic reputation by FIT's summary decision to suspend her for an alleged assault, would be incurred as a result of the disclosure of her identity. A. 17-20. Plaintiff cited decisions holding that the precise relief sought by the student challenging disciplinary proceedings, repair to the unfair and permanent tarnishing of their academic reputation, would be defeated by public identification. A. at 18-19 (*citing Doe v. Trustees of Dartmouth College*, No. 18-CV-040-LM, 2018 WL 2048385, at *5–6 (D.N.H. May 2, 2018); *Doe v. University of St. Thomas*, No. 16-CV-1127, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016)).

The District Court in its initial ruling agreed and held that the third *Sealed Plaintiff* factor weighed in Jane Doe's favor, noting that "Plaintiff seeks, among other things, to have her suspension reversed and her academic record expunged in an effort to save her professional reputation, *relief whose value would be compromise*d if her name is disclosed at this stage." A. 29

However, on Jane Doe's renewed unopposed motion, the District Court instead held that the possibility that Jane Doe "would be stigmatized" is insufficient to proceed anonymously, quoting inapposite district court rulings denying pseudonymity to seasoned adult plaintiffs in employment lawsuits brought against private party employers. A. 119 (*citing Doe v. Townes*, No. 19 Civ. 8034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) and *Doe v. Telemundo Network Grp.* LLC, No. 22 Civ. 7665 (JPC), 2023 WL 6259390, at *5 (S.D.N.Y. Sept. 26, 2023).

The District Court further stated that Jane Doe's interest in anonymity had to be "balanced against" FIT's interests in being publicly named in Jane Doe's suit,

citing *Doe v. Intel Corp.,* 786 F. Supp. 3d 576, 582–83 (S.D.N.Y. 2024), *appeal dismissed,* No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025). A. 119. However, *Doe v. Intel* was likewise inapposite, because it was brought by a seasoned adult, against a private party, who opposed pseudonymity. *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 579 (S.D.N.Y. 2024), *appeal dismissed,* No. 24-3330, 2025 WL 919026 (2d Cir. Feb. 24, 2025).

The District Court then downgraded its prior ruling, from holding that the third *Sealed Plaintiff* factor weighed "in favor" of anonymity, to "only slightly in favor" of anonymity. *Compare* A. 119 *with* A. 29.

In so ruling, the District Court overlooked applicable caselaw that college students like Jane Doe herein would suffer the very harm they seek to avoid if they are not allowed to proceed anonymously in their challenge to disciplinary proceedings, including *Doe v. Dartmouth* and *Doe v. University of St. Thomas* decision, *supra*, as well as *Doe v. Hobart & William Smith Colleges*, No. 6:20-CV-06338 EAW, 2021 WL 1062707, at *3(W.D.N.Y. Mar. 19, 2021)); *Doe v. Rensselaer Polytechnic Inst.*, No. 1:20-cv-1185, 2020 WL 5775193, at *1 (N.D.N.Y. Sept. 28, 2020); *Doe v. Colgate Univ.*, No. 515CV1069LEKDEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ). As the court in *Doe #1 v. Syracuse Univ.*, explained:

> This case, however, is ***materially distinguishable*** from those in which reputational harm and similar, negative economic and other tangible affects naturally flow as consequences from litigation. Plaintiffs allege that their actions were prejudged and they were publicly proclaimed by the defendants as "racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities" ***without a meaningful opportunity to be heard and to defend their actions***. There is plainly a serious stigma associated with allegations of this nature and, *should their identities be made public, plaintiffs could be* ***permanently marked*** *as possessing the character traits attributed to them by the University*.

No. 518CV0496FJSDEP, 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, No. 518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020)(emphasis added; record citations omitted).

Holding as a matter of law that damage to reputation is not sufficient harm to proceed under a pseudonym, and not considering the specific circumstances risk of being *permanently marked* by FIT's disciplinary proceedings, constitutes an abuse of discretion. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

### D. *Sealed* Plaintiff Factor 4: Jane Doe is Particularly Vulnerable to the Possible Harms of Disclosure As A College Student Challenging A Disciplinary Proceeding

In the District Court's initial ruling granting Jane Doe's motion to proceed under a pseudonym, it ruled that the fourth *Sealed Plaintiff* factor, whether Plaintiff is particularly vulnerable to the possible harms of disclosure, was neutral. A. 30. The District Court explained: "although Plaintiff is not a child, her status as a college student who has yet to start her professional career makes her particularly vulnerable to reputational harm."

Two months later, the District Court reversed itself in ruling on Jane Doe's renewed unopposed motion. A. 119. In so ruling, the District Court did not explain why it abandoned its prior reasoning, but cited *Rapp v. Fowler*, 537 F. Supp. 3d 521, 530 (S.D.N.Y. 2021), a case men in their 50's brought against public figure actor Kevin Spacey, alleging sexual abuse decades earlier, and *Townes*, 2020 WL 2395159, at *4, an employment law case brought by a seasoned professional against her private employer, quoting *Rapp* for the proposition that, "Where Plaintiff is an adult "who has chosen to level serious charges against a defendant in the public eye," this fourth factor "weighs in favor of [her] shouldering the burden of such accusations." A. 119.

The District Court did not address the applicable caselaw cited by Jane Doe which recognizes that college students who have not yet begun their professional career are particularly vulnerable to reputational harm. A. 106-107; A. 119. *See Doe v. Trustees of Dartmouth College*, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018) (*citing Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016)) and *Doe v. University of St. Thomas*, 2016 WL 9307609 (D. Minn. May 25, 2016).

In her motion for reconsideration, Jane Doe pointed out that *Townes* was a dissimilar case brought by mid-career professional. A. 138-139. In denying the motion for reconsideration, the District Court cited *Townes* and *Rapp* again, and was silent as to the applicable case law, *supra,* regarding college students challenging disciplinary proceedings. A. at 169.

The District Court's holding that the fourth *Sealed Plaintiff* factor weighed against Jane Doe because she was adult was an incorrect recitation of the law, which constitutes abuse of discretion which should be reversed. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) ("A district court abuses its discretion when "its decision rests on an error of law (such as application of the wrong legal principle").

### E. ***Sealed Plaintiff* Factor 6: The District Court Abused Its Discretion In Holding That FIT is Prejudiced By Jane Doe Proceeding Under a Pseudonym**

Plaintiff argued in her initial motion that the sixth *Sealed Plaintiff* factor, prejudice to the defendant, weighed in her favor because Defendant knows her identity, citing case law. A. 22. Plaintiff also argued that the court routinely grants initial leave to file a complaint anonymously while retaining the discretion to order disclosure of plaintiff's name at a later stage of the proceedings, citing caselaw. *Id.*

The District Court agreed, holding that that the sixth factor favored Jane Doe, and that there was no apparent prejudice to FIT, "particularly" because the District Court was requiring a renewed motion after service on FIT. A. 29.

Jane Doe informed the District Court in her renewed motion that FIT's counsel represented that FIT would not oppose her renewed motion to proceed under a pseudonym and argued again that protecting Jane Doe would not prejudice FIT because it knows her identity. A. 102, 109.

On April 4, 2025, after acknowledging that FIT did not oppose Jane Does's motion to proceed under a pseudonym, the District Court reversed its prior ruling that the sixth factor favored Plaintiff and instead found that it was neutral. A. 121. The District Court acknowledged that FIT knew Jane Doe's identity, but stated, "courts consider a variety of potential prejudice to a defendant including difficulties in conducting discovery, the reputational damage to defendants, *and the fundamental fairness of proceeding anonymously*," and that "[h]ighly publicized cases can cause unknown witnesses to surface," maintaining only one party's identity confidential creates a risk that only witnesses for that side would "come to light." A. 121 (emphasis added; citations omitted). The District Court concluded that "discovery difficulties may persist even though FIT is aware of Plaintiff's identity, and *although "fundamental fairness" would suggest that Plaintiff should shed her cloak of anonymity*, FIT's vulnerability to reputational harm is diminished as a government institution." A. 121 (emphasis added).

Jane Doe argued on reconsideration that FIT did not claim prejudice since it did not oppose Plaintiff's motion, and that in a civil case, where a defendant does not claim prejudice, a court should not independently assert a claim of prejudice, citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375-376 (2020) (parties represented by competent counsel are presumed to know what is best for their case and bear the responsibility for advancing the facts and legal arguments upon which

they seek relief). A. 136-137, 139. Plaintiff further argued that Defendant's non-opposition to Plaintiff's renewed motion to proceed under a pseudonym is evidence that Jane Doe's privacy concerns are substantial and recognized by FIT itself, and therefore ought to be similarly recognized by the Court. A. 139.

In response, on April 21, 2025, the District Court ordered FIT to state "whether by not opposing Plaintiff's renewed motion, Defendant also intended to disclaim all prejudice that could result from Plaintiff proceeding under a pseudonym in this case. Defendant also should address its view as to whether it would suffer any prejudice—either at this initial stage of the litigation or potentially at a later stage—were Plaintiff to be permitted to proceed by pseudonym." A. 145.

On April 28, after admitting that FIT's counsel represented that FIT would not oppose Jane Doe's renewed motion, FIT's counsel claimed that FIT did not intend thereby to disclaim all prejudice that could result from Jane Doe proceeding under a pseudonym.[7] A. 146. FIT claimed that if Jane Doe proceeding anonymously would hinder FIT's ability to defend itself in "all" phases of litigation, but only specified the discovery and trial stages. A. 146. FIT parroted the District Court's ruling that "witnesses who could support FIT's defenses would not be able to come forward if they cannot ascertain the identity of the Plaintiff." A. 147. Defendant further admitted that at least twice since this lawsuit was filed, stickers stating, "The Only Good Zionist is a Dead Zionist" were affixed inside its campus buildings. A. 147, 149-150.

On May 23, 2025, FIT filed its first motion to dismiss the lawsuit in its entirety under Fed. R. Civ. P. 12(b)(6), supported by an affidavit by the Dean who summarily

---

[7] FIT's counsel added, "Moreover, Plaintiff's counsel did not provide FIT with its motion papers prior to Filing, and FIT did not adopt any statements made therein by Plaintiff," a non-point, since Jane Doe's renewed motion was essentially identical to her initial motion that FIT's counsel had thirty days to study, with three exceptions, none of which was news to FIT: 1. FIT's non-opposition; 2. FIT is a government entity, and 3. the "Only Good Zionist is a Dead Zionist" stickers, and FIT community member attire calling for intifada with a blood red Jewish star.

suspended Plaintiff. A. 5. On June 20, 2025, Plaintiff filed her opposition to the motion to dismiss, but upon further legal analysis, a few days later filed a letter motion seeking leave to amend her First Amended Complaint to add as an individual defendant the Dean who summarily suspended Plaintiff, citing *Ex parte Young*, 209 U.S. 123 (1908). A. 6, ECF 40, 41, at 1.

Nine days after granting Jane Doe leave to file her motion to amend to add the individual defendant, the District Court denied Jane Doe's motion for reconsideration.[8]. A. 6, ECF 43, 44. The District Court rejected Jane Doe's argument that the District Court "independently assert[ed] a claim of prejudice" on behalf of FIT, explaining that district courts must weigh "the interests of both *the public* and the opposing party". A. 169-170 (emphasis in original)(citations omitted). The District Court further held Jane Doe failed to identify overlooked precedent that a party's failure to oppose a motion to proceed anonymously operates as a waiver of the prejudice inquiry, distinguishing the controlling authority Jane Doe cited, *United States v. Romano*, 794 F.3d 317 (2d Cir. 2015), on the grounds that in that case, the waiver was made to the court, rather than to opposing counsel. A. 170-171. The District Court did not address Jane Doe's argument that neither FIT nor the District Court had identified any prejudice to the Defendant at the initial pleading stage. A. 153-154; 166-172.

### 1. The District Court did Not Consider Whether the Nature of Any Prejudice To the Defendant Differs at the Initial Pleading Stage Than At Later Stages of Litigation

[8] It would be an abuse of discretion for the district court to deny the motion for reconsideration out of an unstated sense of unfairness for an individually named defendant to face a plaintiff "cloaked in anonymity," without providing Jane Doe an opportunity to be heard on the matter The two individuals are in very different places; Jane Doe faces a risk of retaliatory harm. In contrast, nothing in the record indicates that the individual Dean defendant would face a risk of retaliatory harm. Moreover, Jane Doe has kept her identity confidential throughout this litigation, whereas the Dean has already filed two affidavits in her own name. A. 5, at ECF 36; A. 149. *See Doe v. Smith*, 189 F.R.D. 239, 244 (E.D.N.Y. 1998), *favorable after opinion vacated on reconsideration*, 105 F. Supp. 2d 40 (E.D.N.Y. 1999)("Since the defendant himself allowed the allegations to be publicly aired, he cannot now claim prejudice therefrom.").

This Court in *Sealed Plaintiff* noted with approval the following sixth factor in deciding whether to approve a motion to proceed under a pseudonym:

> [W]hether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, *whether the nature of that prejudice (if any) differs at any particular stage of the litigation*, and whether any prejudice can be mitigated by the district court,

537 F.3d 185, 190 (2d Cir. 2008)(emphasis added)(*citing Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000)). The circuit court in *Advanced Textile Corp*. explained that "The court *must* also determine the *precise* prejudice *at each stage of the proceedings* to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." 214 F.3d 1058, 1068 (9th Cir. 2000)(emphasis added, citations omitted).

The court in *Advanced Textile Corp.* reversed the district court's denial of a motion to proceed under a pseudonym, explaining:

> The district court correctly considered prejudice to defendants as a factor in its analysis*, but failed to explain how defendants would be prejudiced*. …. We recognize that *at some later point in the proceedings* it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute individualized accusations….. *At present, however, discovery is stayed and district court has not yet ruled on plaintiffs' …. motion [seeking authorization of notice to be sent to all potential plaintiffs]. Thus, at present defendants suffer no prejudice by not knowing the names of plaintiffs.*"

*Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

This Court in *Sealed Plaintiff*, and the Ninth Circuit in the *Advanced Textile* case it endorsed, thus made clear that district courts must not only consider whether the defendant is prejudiced, but also *whether the nature of that prejudice differs at any particular stage of the litigation.* The District Court's failure to do so herein is an abuse of discretion. *Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

At the time of the District Court's ruling on Jane Doe's motion for reconsideration, this case was at the initial pleading stage, as noted above. At the motion to dismiss stage, the court is required to accept all facts alleged in the complaint as true. *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 61 (2d Cir. 2019). Accordingly, purported prejudice to FIT at discovery and trial is not yet ripe for consideration, as Jane Doe argued. A. 154.

Other courts within the Second Circuit have recognized the need to examine whether the nature of the prejudice differs at any particular stage of the litigation. *See Doe v. Hobart & William Smith Colleges*, No. 6:20-CV-06338 EAW, 2021 WL 1062707, at *3 (W.D.N.Y. Mar. 19, 2021) ("motions to dismiss are pending, and while Defendants raise concerns about discovery being impeded if Plaintiff is permitted to proceed anonymously, those concerns can be raised during later proceedings in this case, if necessary"); *cf. Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) ("the [pseudonymity] restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial").

The District Court's apparent "lack of openness to persuasion" about the absence of prejudice to a defendant at this specific stage, the initial pleading stage, as required by this Court in *Sealed Plaintiff* - especially when neither the defendant nor the District Court identified any prejudice to FIT *at this specific stage*, was an abuse of discretion. In the words of the Fourth Circuit in *James:*

> If the district court was actually open to persuasion on the anonymity issue—i.e., was properly in a discretionary rather than an under-no-circumstances decisional mode—we think, with all respect for its judgment, that it critically misapprehended the significance of these proffers.

6 F.3d 233, 241 (4th Cir. 1993).

### 2. The District Court Abused Its Discretion When It Found that Dangerous Media Attention on Jane Doe's Identity Could

**Unearth Witnesses Favorable to the Defendant At the Discovery or Trial Stage**

The gravamen of Jane Doe's lawsuit is a two-fold challenge: first, to FIT's general deliberate indifference to hostile antisemitism at FIT in violation of Title VI (A. 32, at para. 1, A. 35, at para. 13); A. 36-38 (paras. 20-36) , and second, to FIT's retaliatory, discriminatory, and unfair suspension of Jane Doe after she was falsely accused of deliberately assaulting a stranger peddling literature calling for signatures on an antisemitic petition on February 2, 2024. A. 32-35; at paras. 1-12; A. 39, at para. 37; A. 40-44..

Media attention on Jane Doe's identity cannot unearth witnesses favorable to FIT on the first component of the lawsuit about the generally hostile antisemitic environment at FIT perpetuated by its deliberate indifference. For example, the record is clear that persons inside FIT's buildings have, at least three times during the pendency of this litigation, affixed, "The Only Good Zionist is a Dead Zionist" stickers. A. 149, A. 156 n. 1, A. 160 at para. 5, 164-165.

The issue here is whether or not FIT scratching off repeated antisemitic death threat stickers, as FIT avers, is taking meaningful action towards quelling on campus antisemitism such that FIT is not being deliberately indifferent to it. A. 149. FIT has not claimed that it has identified, let alone disciplined, any of the persons who affixed the Zionist death threat stickers. A. 149. Nor does FIT claim to have embarked on antidiscrimination education in the FIT community as to why urging the death of Zionists such as Jane Doe is antisemitic and contrary to its Code of Conduct. A.149. Whether FIT was indifferent to the on campus antisemitism evinced by the Zionist death threat stickers, and the other on campus antisemitism is not an issue that turns on Jane Doe's credibility that would be impacted by unearthing new witnesses as a result of media attention that would put her in harm's way.

Moreover, FIT could not be assisted in the defense of its disciplinary proceedings against Jane Doe that began on February 2, 2024 by new witnesses turned up as a result of media attention garnered by revealing Jane Doe's identity. FIT already knows the identity of any witnesses that support its defense against the claimed selective enforcement and due process violations. The issue is whether that 2024 disciplinary proceeding, now closed, was retaliatory, discriminatory and violated due process. New witnesses unearthed as a result of media attention garnered by Jane Doe's identity could not help FIT establish that in 2024, it comported with Due Process and the Fourteenth Amendment.

Indeed, FIT's claim of potential prejudice based on new witnesses surfacing from media attention is speculative at best, since the accusation that Jane Doe deliberately assaulting an anti-Zionist appeared on unofficial FIT student social media in February 2024. *See Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *8 (N.D.N.Y. Sept. 10, 2018), *report and recommendation adopted*, No. 518CV00496BKSML, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) (granting motion to proceed under pseudonym); *cf Doe v. Colgate Univ.,* No. 15CV1069LEKDEP, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (media attention on college assaults negated any prejudice to Defendant).

### 3. The District Court Abused Its Discretion in Relying Upon Waived Prejudice

It is undisputed that FIT's counsel, having had the benefit of thirty days after entering her appearance to consider Jane Doe's motion to proceed under a pseudonym, and the order granting it, stated, in writing, "FIT will not oppose your renewed motion to proceed under a pseudonym." A. 102, 114, 136, 139, 143-144, 146.

Other courts within the Second Circuit have recognized that where, as here, a defendant did not oppose a plaintiff's motion to proceed under a pseudonym, the court cannot find that it would be prejudiced thereby. *See Doe 1 v. Branca USA, Inc.,* No. 22-CV-3806 (LJL), 2022 WL 2713543, at *4 (S.D.N.Y. July 13, 2022)("Defendants have not opposed the motion to proceed anonymously, and accordingly, the Court *cannot* conclude that *they* will be prejudiced. The sixth factor thus does not disfavor Plaintiffs")(emphasis added).

Nonetheless, the District Court relied upon prejudice to the Defendant under two different *Sealed Plaintiff* factors. First, it held that the risk of retaliatory harm to Plaintiff, as evidenced the "violent online threats" against her, must be balanced against prejudice to the Defendant, and downgraded its holding that the risk of retaliatory harm "weighed in favor" Plaintiff's motion to only "weigh only slightly in favor". A. 118-119; *compare with* A. 29. Second, the District Court relied on prejudice to the defendant at the discovery and trial phase to downgrade its holding that the sixth factor, prejudice to the defendant, weighed in Plaintiff's favor, to being "neutral." A. 120-121; *compare with* A. 29-30.

Neither in balancing the factors two and three risk of retaliatory harm to Plaintiff against prejudice to the defendant, nor in its analysis of the factor six risk of prejudice to the defendant, did it mention that the Defendant did not oppose Plaintiff's renewed motion. A. 120-121.

Instead, both times the District Court relied upon prejudice to FIT it revealed a general inclination against permitting a Plaintiff to proceed under a pseudonym. Thus, in balancing Factors Two and Three, risk of retaliatory harm to Jane Doe, against prejudice to FIT, the court stated, "Here, if Plaintiff were to proceed under a pseudonym, FIT "would be required to defend [itself] publicly while [P]laintiff could make her accusations from *behind a cloak of anonymity."* A. 119 (citation omitted; emphasis added).

Similarly, in analyzing the sixth factor, risk of prejudice to the defendant, the District Court stated, "when analyzing this sixth factor, courts consider a variety of potential prejudice to a defendant including difficulties in conducting discovery, the reputational damage to defendants, and *the fundamental fairness of proceeding anonymously*" and that "*fundamental fairness"* would suggest that *Plaintiff should shed her cloak of anonymity*." A. 121.

While the District Court herein stated that it was engaged in a balancing process, it is apparent that it was relying upon a generalized assessment of the fundamental fairness of one party proceeding under a pseudonym, rather than assessing the specific circumstances of the case before it, as required by *Sealed Plaintiff*.

This is an abuse of discretion. *See James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) (reversing denial of motion to proceed under a pseudonym); *see also Plaintiff B v. Francis,* 631 F.3d 1310, 1315 (11th Cir. 2011) (reversing denial of motion to proceed under pseudonym) ("A district court abuses its discretion in denying a motion to remain anonymous if it fails to actually consider the circumstances of the case and to weigh the relevant factors and instead follows a blanket rule in making its final decision"). As the Fourth Circuit explained in *James*:

> Indeed, it's plain that the court looked at the problem both from the plaintiffs' and the defendants' viewpoints, suggesting a balancing process. *But in the end, the impression is powerful indeed that its conclusion was based upon a general rather than a particularized assessment of the equities involved: that as a general proposition party-anonymity at trial is simply not permissible.*

*Id.* at 239.

Additionally, the District Court's order to FIT, a counseled defendant, to state whether it intended by its non-opposition to waive prejudice, and if not, what prejudice it would suffer, "in fact almost announces itself as a flat rule of general

application based upon strongly felt personal predilection." *James v. Jacobson*, 6 F.3d 233, 239–40 (4th Cir. 1993).

Indeed, given Jane Doe's reliance on FIT's representation that it would not oppose her renewed motion, FIT was estopped from changing course and asserting prejudice therefrom. *See EW v. New York Blood Ctr*., 213 F.R.D. 108, 110 (E.D.N.Y. 2003) ("Because *plaintiff's counsel was led to assume* that [defendant] would not contest a complaint filed under a pseudonym, [defendant] should now be estopped from seeking a dismissal [based on proceeding under a pseudonym] that would extinguish plaintiff's cause of action.").

Regardless of whether FIT intended to waive prejudice by stating that it would not oppose Plaintiff's renewed motion, and by not filing an opposition, the law is clear it did thereby waive prejudice as to Jane Doe's renewed motion, as argued by Jane Doe. A. 155 (citing *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (parties represented by competent counsel are presumed to know what is best for their case and bear the responsibility for advancing the facts and legal arguments upon which they seek relief); *United States v. Agrawal,* 726 F.3d 235, 259 (2d Cir. 2013) ( "a strategic decision [that is] evidenced not merely by silence but by *a negative response on the record to a district court invitation to voice objection, does more than forfeit the unraised objection; it waives it*"(*as cited in United States v. Romano*, 794 F.3d 317, 334 (2d Cir. 2015)) (emphasis added).

The U.S. Supreme Court's ruling in *Levine v. United States*, 362 U.S. 610 (1960) is instructive as to a counseled defendant's waiver of prejudice regarding a judicial process less than fully open to the public. In that case, the Supreme Court affirmed a criminal contempt conviction based upon conduct in a courtroom closed to public. Justice Frankfurter explained:

> Had petitioner requested, and the court denied his wish, that the courtroom be opened to the public before the final stage of these proceedings we would have

> a different case....Nor are we dealing with a situation where prejudice, attributable to secrecy, is found to be sufficiently impressive to render irrelevant failure to make a timely objection at proceedings like these. This is obviously not such a case. Due regard generally for the public nature of the judicial process does not require disregard of the solid demands of the fair administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal.

*Id.* at 619.

The District Court, in denying Plaintiff's motion for reconsideration as to the sixth factor prejudice to the defendant, explained that *Sealed Plaintiff* required courts to weigh "the interests of both *the public* and the opposing party," cited four cases. A. 170 (emphasis in original), and 117.

However, none of the cases relied upon by the District Court support a finding prejudice to a defendant who had not opposed a motion to proceed under a pseudonym. Two of the cases did not weigh *Sealed Plaintiff* factor six as to a defendant who had appeared and stated that it would not oppose a motion to proceed under a pseudonym. A. 116-117. *See S.D. v. Decker*, No. 22 Civ. 3063 (VSB) (BCM), 2022 WL 1239589, at *2-3 (S.D.N.Y. Apr. 27, 2022) (on unopposed motion, weighing prejudice to *public*, not prejudice to *defendant*); *Doe v. Leonelli*, No. 22 Civ. 3732 (CM), 2022 WL 2003635, at *1 (S.D.N.Y. June 6, 2022) (defendants not yet appeared).

The other two cases held that the parties who did not oppose the motion were *not* prejudiced. *P.D. v. Sullivan*, No. 24 Civ. 778 (NSR), 2024 WL 1719890, at *2-3 (S.D.N.Y. Apr. 22, 2024); *Matthews v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 17 Civ. 503 (TJM) (DEP), 2018 WL 11697266, at *6 (N.D.N.Y. Oct. 19, 2018)(inmate plaintiffs not prejudiced by allowing defendant correctional facility officers to maintain their pseudonymity because correctional officers already revealed their identities to the inmates' counsel).

Indeed, the court in *P.D. Sullivan* correctly cited defendant's non-opposition as the basis for concluding the sixth factor weighed *in favor* of pseudonymity:

> The …. Sixth… factors *weigh[s] in favor* of granting Plaintiff's motion. ….[T]here is little to no prejudice to Defendant *as she has not opposed Plaintiff's request* and Plaintiff indicated he would provide his name to Defendant.

2024 WL 1719890, at *2 (emphasis added).

*Sealed Plaintiff* does not require district courts to disregard defendant's stated interests and ascribe prejudice to a defendant who has disclaimed it. This would create massive judicial inefficiency, as district courts would no longer be able to rely upon consent motions to proceed under a pseudonym as an indicia of the defendant's position on prejudice.

This Court held that the public interest is weighed in *Sealed Plaintiff* factors eight and nine; the District Court's decision weighs the public interest a third time in the guise of *Sealed* Plaintiff factor six, prejudice to *a defendant* who had chosen not to oppose pseudonymity. In the words of the Fourth Circuit in *James*, "the impression is powerful indeed that its conclusion was based upon a general rather than a particularized assessment of the equities involved: that as a general proposition party-anonymity," even at the initial pleading stage, is unacceptable. 6 F.3d 233, 239 (4th Cir. 1993).

### F. ***Sealed Plaintiff* Factors 8 and 9:** It is Contrary to the Public's Interest to Disclose Jane Doe's Identity, and There is a Weak Public Interest in Knowing the Litigants' Identities Due To The Purely Legal Nature of the Issues Presented at the Initial Pleading Stage of the Litigation

The District Court initially ruled that the eighth *Sealed Plaintiff* factor "weighed slightly against" Jane Doe because "given the media's interest in cases surrounding alleged disparate treatment of Jewish students at universities and the

politically charged nature of Plaintiff's allegations." A.30-31. The District Court also initially ruled that the ninth factor "tilts marginally against" Plaintiff because the issues in this case are likely not of a purely or predominantly legal nature. A. 31.

In Plaintiff's renewed motion to proceed under a pseudonym, she repeated her arguments from her initial motion that, since she is not a public figure or a supervisory employee of Defendant, the public has minimal legitimate interest in knowing her identity because her identity has little or no relevance to the underlying case, *citing Doe v. Pittsylvania County*, Va., 844 F. Supp. 2d 724, 728 (W.D. Va. 2012), D*oe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980)). A. 23-24, A. 111-112.

Two months after ruling that the eighth and ninth *Sealed Plaintiff* factors weighted "slightly" and "marginally against" her, the District Court increased the adverse weight to "weigh against", given "that there is a demonstrated public interest in cases surrounding alleged disparate treatment of Jewish students at colleges" and that the facts at the core of this case involve "particular action and incidents" rather than "abstract challenges to public policies." A. 122.

### 1. The Public Has No Interest In Jane Doe's Identity As to Her Allegations that FIT Has Been Deliberately Indifferent to On Campus Antisemitism

Title VI of the Civil Rights Act of 1964 reflects the public interest in avoiding the use of federal funds in support of discriminatory practices, and to provide individual citizens effective protection against those practices. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)(*citing* 110 Cong. Rec. 7062 (1964)), *abrogated on other grounds by Alexander v. Sandoval*, 532 U.S. 275, 282 (2001).

Here, the gravamen of Plaintiff's lawsuit is a two-fold challenge: first, to FIT's general deliberate indifference to hostile antisemitism at FIT in violation of Title VI (A. 32, at para. 1, A. 35, at para. 13); A. 36-38 (paras. 20-36) , and second, to FIT's

retaliatory, discriminatory, and unfair suspension of Jane Doe after she was falsely accused of deliberately assaulting a stranger peddling literature calling for signatures on an antisemitic petition on February 2, 2024. A. 32-35; at paras. 1-12; A. 39, at para. 37; A. 40-44.

As to the first component of Plaintiff's lawsuit, alleging that FIT has been generally deliberately indifferent to hostile on campus antisemitism, the public has no interest in her specific identity. *See, eg., Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, (D.C. Cir. 1989). As the DC Circuit explained in *Horner*:

> The lesson for this case, *mutatis mutandis, is that unless the public would learn something directly about the workings of the Government by knowing the names and addresses of its [plaintiffs], their disclosure is not affected with the public interest.*_…. The simple fact is that those records say nothing of significance about "what the[ ] Government is up to.
>
> ….
>
> We have been shown *no public interest* in, and a modest personal privacy interest against, disclosure of the names and addresses of individuals receiving federal employee retirement benefits. We need not linger over the balance; something, *even a modest privacy interest, outweighs nothing every time*."

*Id.* at 879 (reversing grant of Freedom of Information Act ("FOIA") request)(emphasis added). Jane Doe's identity has no relevance to this aspect of the underlying case. *See Doe v. Pittsylvania County*, Va., 844 F. Supp. 2d 724, 728 (W.D. Va. 2012), D*oe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 574 (1980)). A. 23-24, A. 111-112.

Where, as here, a lawsuit is brought that affects many similarly situated individuals, the identities of the particular party bringing the suit is largely irrelevant to the public interest. *See, e.g., Free Speech v. Reno*, 98 Civ. 2680(MBM), 1999 WL 47310, at *2 (S.D.N.Y. Feb. 1, 1999); *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D.Pa.1997).

The District Court recognized that, "There is a demonstrated *public interest* in cases surrounding alleged disparate treatment of Jewish students at colleges." A. 122 (emphasis added). Since the public has *no interest* in knowing her identity as to the first component of her lawsuit, the District Court abused its discretion in denying her motion to proceed under a pseudonym on these grounds.

Moreover, FIT's disciplinary proceedings against Plaintiff were confidential as required under Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g. A. 23, A. 86, A. 110, which reflects a further public policy in favor of protecting the confidentiality of student records. Accordingly, even if there were unknown witnesses who could help FIT defend its conduct of the now closed disciplinary proceeding, it would be inconsistent with the public policy that led to the enactment of FERPA for Defendant to attempt to unearth new witnesses by means of broad media attention on Jane Doe's identity, especially media attention that could put her in harms way.

**2. There is No Public Interest In Knowing Plaintiff's Identity Because at the Initial Pleadings Stage The Lawsuit Involves Purely Legal Issues.**

The second component of Jane Doe's lawsuit, challenging her disciplinary suspension on February 2, 2024 after she was falsely accused of assault, is at the initial pleadings stage, when courts must presume her pleadings to be true as noted above, and only *purely legal* issues are at play. Thus, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). Accordingly, it was an abuse of discretion for the District Court to find that *Sealed Plaintiff* factors eight and nine "weigh against" allowing Jane Doe's renewed motion to proceed under a pseudonym.

### 3. The Public Has A Strong Interest in Avoiding Deterrence of Suits Vindicating Title VI Rights

This Court has wisely held that it is "in the public interest that the price of access to the courts not be too high." *Doe v. N.Y. Blood Ctr.*, 39 Fed. Appx. 686 (2d Cir. 2001). Here, the record paints a terrifyingly hostile picture of what it is like to attend FIT for Jewish students who, like the vast majority of Jews, are Zionists. The parties' are in agreement that Jewish students at FIT attend a college where stickers stating, "The Only Good Zionist is a Dead Zionist" were repeatedly posted inside its buildings during the pendency of this litigation. Further, Plaintiff has alleged that she was told by her fellow students at an anti-Israel protest to "go kill [herself]," and later when her picture was posted online, others suggested that they "beat[] her ass as an example," as the District Court recognized A. 27 (citations omitted). Plaintiff's lawsuit further alleges that a fellow FIT student led chants encouraging a global intifada against Jews at an anti-Israel protest – with impunity. A. 37 at paras. 23, 24. False, defamatory and antisemitic in person and online attacks (*e.g.*, "baby killer!","genocide supporter", "Zio!") have become the norm in the daily existence of Jewish students at FIT. A. 37 at para. 27. Protests and stickers at FIT encourage students to "punch a Zionist". A. 37, at para. 28. This demonization of Jews, not surprisingly, has resulted in violence. At a rally where an FIT student led calls for a global intifada, a Jewish student was hit with a sign by a person who was, on information and belief, an FIT student. A. 37, at para. 29.

Where, as here, a plaintiff attacks a governmental policy, "the plaintiff presumably represents a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of his rights. *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) *(citing Roe v. Wade,* 410 U.S. 113 (1973).

In addition, courts have recognized that precluding pseudonymous litigation specifically in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process.[9] *See Doe v. Colgate Univ.,* No. 5:15CV1069, 2016 WL 1448829 (N.D.N.Y. Apr. 12, 2016), at *3 (as cited in *Doe v. Trs. of Dartmouth Coll.*, No. 18–CV–040–LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018)") .

Especially in controversial cases, such here, there is a strong public interest in protecting the privacy of plaintiffs so that they are not discouraged from asserting their claims. *See Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997).

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008), this Court repeatedly cited *Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006), in formulating this Court's ten-factor guidance. In *Del Rio,* the court reasoned:

> [A]s the courts have noted, it is in the public interest that the price of access to the courts not be too high. *New York Blood Center,* 213 F.R.D. at 112–13. Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued. *See, e.g. Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981). The value of open proceedings disappears when there are no proceedings to be had.

*Doe v. Del Rio,* 241 F.R.D. at 158.

Accordingly, the District Court abused its discretion when it found that the eighth and ninth *Sealed Plaintiff* factors weighed against Plaintiff proceeding under a pseudonym.

---

[9] Furthermore, the public has a specific interest in protecting the confidentiality of student records, as evidenced by enactment of the Family Educational Rights and Privacy Act (FERPA), which prohibits the release of "education records" to unauthorized persons. *See Jewish Press, Inc. v. Kingsborough Community College*, 201 A.D.3d 547, 549 (2022) (college had reasonable basis for finding that student complaints could not be produced even if personally identifying information was redacted, as student complaints were detailed and redaction of personal identifiers would not prevent readers from deducing who the complainants were).

### G. *Sealed Plaintiff* Factor 10: There are No Alternative Mechanisms for Protecting the Confidentiality of Jane Doe

The District Court initially ruled as the tenth *Sealed Plaintiff* factor favored Jane Doe because it was unaware of any alternative mechanisms to protect her identity. A. 29-30.

In Jane Doe's renewed motion, she reiterated her argument that, aside from granting Jane Doe leave to proceed under a pseudonym, the only alternative mechanism for protecting her confidentiality would be to seal the entire action, which would limit public access far more than merely protecting her identity with a pseudonym. A. 24, A. 112.

Two months after ruling that the tenth *Sealed Plaintiff* factor favored pseudonymity, because it was "unaware" of alternative mechanisms to protect plaintiff, the District Court reversed itself and ruled that the tenth factor weighed against it, reasoning that Jane Doe could seek less drastic remedies than blanket anonymity, such as "protective documents, redactions, confidentiality agreements or sealing documents." A. 122-123.

However, none of these mechanisms would protect Jane Doe from the risk of retaliatory harm that would flow from having her name published in the caption. Indeed, the District Court concluded that Jane Doe's anonymity could prejudice FIT because "highly publicized" cases can unearth new witnesses for the defense. A. 122. To the extent that this lawsuit becomes "highly publicized" with Plaintiff's name in the caption, the risk of retaliatory harm to her becomes that much greater. Nor would these protective mechanisms prevent the defeat of one of the very purposes of the lawsuit, namely, repair and expungement of her academic record, even if successful.

Accordingly, the district court abused its discretion when it ruled that the tenth factor weighed against pseudonymity.

## CONCLUSION

Appellant respectfully requests that the Court reverse the District Court's denial of her motion to proceed under a pseudonym.

Dated: October 30, 2025

Respectfully submitted,
/s/ Abra C. Siegel
Abra C. Siegel
National Jewish Advocacy Center
3 Times Square
New York, NY 10036

*Counsel for Petitioner-Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times New Roman proportional font and contains 13,048 words and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated: October 30, 2025

/s/ *Abra C. Siegel*
Abra C. Siegel
National Jewish Advocacy
Cetner, Inc.
3 Times Square
NY NY 10036
(312) 487-1281
abra@njaclaw.org

*Counsel for Petitioners-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on October 30, 2025. Service upon participants in the case who are registered CM/ECF users will be accomplished by the appellate CM/ECF system.

/s/ Abra C. Siegel
Abra C. Siegel

*Counsel for Petitioners-Appellants*